**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---

SPIROCHAETE RESEARCH LABS, LLC;
FLUORO-SPEC INC.; and ERIC C. RITTER,
individually,

                **Plaintiffs,**

v.

LUMETALLIX HOLDING B.V.;
LUMETALLIX B.V.;
XANDER TERPSTRA;
OBTAINIUM LLC;
JOHN SCHIFF; and
ADRIAAN N.A. BUYSERD,

                **Defendants**.

Case No. 26-2461

COMPLAINT
JURY TRIAL DEMANDED

---

Plaintiffs Spirochaete Research Labs, LLC ("Spirochaete"), Fluoro-Spec Inc. ("Fluoro-Spec"), and Eric C. Ritter ("Ritter") allege, on personal knowledge as to themselves and their own acts, and on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is an action arising from false commercial statements and targeted interference with Plaintiffs' United States sales channels for lead-detection test kits.

2. Plaintiffs and Defendants compete in the United States market for perovskite-based lead-detection test kits marketed to consumers and other purchasers.

3. Plaintiffs allege that Defendants used false and misleading statements in commercial advertising and promotion, including statements that Defendants possessed a "granted patent" or "valid international patent" enforceable against Plaintiffs, statements that Plaintiffs were infringing such rights, comparative statements that Defendants' product

1

was "10,000x more sensitive than swabs," and false or misleading product-composition and lawful-sale messaging concerning the chemical contents of Defendants' product.

4. Plaintiffs further allege that Defendants used those statements to disrupt Plaintiffs' commercial relationships and channels of trade, including by directing false communications to online platforms, commercial intermediaries, and a New York distributor.

5. Plaintiffs seek damages, Defendants' profits to the extent permitted by law, declaratory and injunctive relief, corrective advertising, costs, and such other relief as the Court deems just and proper.

## PARTIES

6. Plaintiff Spirochaete is a New York limited liability company with operations in Suffolk County, New York.

7. Plaintiff Fluoro-Spec is a Delaware corporation authorized to do business in New York, with its principal place of business at 9 Technology Drive, East Setauket, New York 11733.

8. Plaintiff Ritter is an individual residing in Suffolk County, New York. Ritter is the founder and principal of Spirochaete and Fluoro-Spec.

9. At all relevant times, Ritter conducted the business activities at issue from Suffolk County, New York. Fluoro-Spec conducted the product sales and commercial relationships described herein, including the Master Labs transaction and the Rubin advertising arrangement, and Fluoro-Spec sustained the commercial losses specifically identified in this Complaint. Plaintiffs seek recovery only for losses sustained by the Plaintiff that incurred them.

2

10. Defendant Lumetallix Holding B.V. is a Dutch entity with its principal office in Amsterdam, the Netherlands. On information and belief, it holds or claims rights relating to the Lumetallix brand and the patent applications at issue in this action.

11. Defendant Lumetallix B.V. is a Dutch entity with its principal office in Amsterdam, the Netherlands. On information and belief, it manufactures, markets, ships, and/or licenses the competing Lumetallix lead-testing kit for sale in the United States.

12. Defendant Xander Terpstra is an individual domiciled in the Netherlands and a co-founder and officer of one or both Lumetallix entities.

13. Defendant Obtainium LLC is a limited liability company with a business address at 209 E. 37th Street, Garden City, Idaho 83714. On information and belief, Obtainium is the United States distributor and Amazon seller of record for the Lumetallix product.

14. Defendant John Schiff is an individual residing in Idaho. On information and belief, Schiff controls Obtainium and personally directed, authorized, approved, or knowingly participated in the challenged commercial conduct alleged herein.

15. Defendant Adriaan N.A. Buyserd is an individual domiciled in the Netherlands who, on information and belief, acted as an agent or representative of the Lumetallix defendants in directing false commercial and legal threats to United States counterparties, including a New York distributor.

**JURISDICTION AND VENUE**

16. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Count One arises under the Lanham Act, 15 U.S.C. § 1125(a).

17. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy.

18. This Court has personal jurisdiction over Lumetallix Holding B.V., Lumetallix B.V., and Terpstra under N.Y. C.P.L.R. § 302(a)(1) and § 302(a)(3) because those Defendants transacted business in New York and committed tortious acts outside New York causing injury in New York while purposefully directing commercial activity and false statements into New York and the broader United States market. On information and belief, those Defendants caused the Lumetallix product to be sold and shipped into this District through Obtainium and through the United States-facing website lumetallixusa.com; caused commercial statements to be disseminated into New York through Amazon, social-media channels, and platform complaints; and directed false patent-rights assertions toward commercial relationships centered in New York.

19. Plaintiffs documented at least two consummated sales of the Lumetallix product into East Setauket, New York in this District: (a) an Amazon order placed on December 24, 2025 and delivered on December 29, 2025 to 9 Technology Drive, East Setauket, New York 11733, attached as **Exhibit B**; and (b) a lumetallixusa.com order confirmed on January 13, 2026 and delivered on January 20, 2026 to the same address, attached as **Exhibit C**.

20. This Court has personal jurisdiction over Obtainium LLC and Schiff under N.Y. C.P.L.R. § 302(a)(1) because they transacted business in New York by offering the Lumetallix product for sale and shipping it into this District, including to East Setauket, New York, and because Plaintiffs' claims arise directly from those transactions and the advertising attached to those sales. On information and belief, Schiff personally controlled or materially participated in the United States distribution and online sale of the Lumetallix product through Obtainium and lumetallixusa.com.

21. This Court has personal jurisdiction over Buyserd under N.Y. C.P.L.R. § 302(a)(1) and § 302(a)(3) because, on April 14, 2026, he directed communications into New York for the purpose of inducing disruption of a New York commercial relationship, and the injury from that conduct was suffered in New York.

22. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this District, including Plaintiffs' business operations, Defendants' sales into this District, and Defendants' alleged interference with New York-centered commercial relationships.

## FACTUAL ALLEGATIONS

### A. The Parties Compete in the Same Market

23. Plaintiffs develop, market, and sell lead-detection products, including perovskite-based lead test kits sold through United States channels.

24. Defendants market and sell a directly competing product under the Lumetallix brand through online channels and a United States distribution structure.

25. On information and belief, Defendants' United States sales channel includes Amazon.com, the website lumetallixusa.com, and United States-facing promotional communications directed to consumers, influencers, platforms, and commercial intermediaries.

26. Plaintiffs further allege that Defendants marketed and sold the Lumetallix product in the United States while failing to disclose the presence of methylammonium bromide in product-facing materials and while using commercial messaging that conveyed, expressly or by necessary implication, that the product was proper and lawful for sale in the United States.

**B. Defendants Marketed the Lumetallix Product in the United States Through Obtainium**

27. At all relevant times, Obtainium was identified as the seller of record for the Lumetallix product on Amazon.

28. Plaintiffs obtained and preserved screenshots of the Amazon product listing for "Lumetallix The Original Glowing Lead Test," which listed the product as sold by Obtainium LLC and advertised, among other things, that the product was "10,000x more sensitive than swabs." A true and correct copy is attached as **Exhibit A**.

29. Plaintiffs also obtained and preserved screenshots and order confirmations showing sales and deliveries of the Lumetallix product into East Setauket, New York. True and correct copies are attached as **Exhibits B and C**.

30. On information and belief, Schiff personally controlled or materially participated in the United States distribution and online sale of the Lumetallix product through Obtainium and lumetallixusa.com. A true and correct copy of the Lumetallix distributor page identifying Obtainium as the North America distributor is attached as **Exhibit D**.

31. On information and belief, Schiff personally writes, edits, reviews, approves, and publishes product listings and advertising copy on the Obtainium Amazon storefront and on the website lumetallixusa.com, which are the channels through which the false and misleading statements alleged in this Complaint are presented to United States consumers, distributors, and commercial buyers. On information and belief, Schiff also personally responds to customer inquiries and complaints through Amazon's seller-messaging system and through lumetallixusa.com, and personally authors, approves, or directs the comparative-

6

performance representations, patent-rights messaging, and lawful-sale or regulatory-compliance messaging published through those channels.

32. On information and belief, Schiff personally participated in the preparation, approval, and publication of the statements challenged in this action and in the U.S. sales activity through which those statements were disseminated.

33. On information and belief, the challenged statements and acts were not isolated or accidental. They were part of a coordinated course of conduct among the Lumetallix defendants, their United States distributor Obtainium, Schiff, and Buyserd, who used overlapping sales channels, overlapping patent-rights messaging, overlapping marketplace communications, and closely timed interventions with commercial counterparties to impair Plaintiffs' ability to compete in the United States market.

34. Plaintiffs distinguish between two categories of misconduct alleged herein: first, Defendants' marketplace-facing commercial advertising and promotion, including product listings, website statements, social-media promotional materials, and comparative product claims; and second, Defendants' targeted communications to platforms, distributors, commercial counterparties, and other third parties designed to interfere with Plaintiffs' business relationships. Plaintiffs plead the former as part of their Lanham Act false advertising claim and the latter as part of their state-law interference and injurious falsehood claims.

**C. Defendants Made False Patent-Status Statements**

35. Defendants made and caused to be made commercial statements that the Lumetallix product was protected by a granted patent, that Lumetallix possessed valid patent rights enforceable against Plaintiffs, or that Plaintiffs were infringing such rights.

36. Plaintiffs have preserved, among other things, a March 15, 2024 Instagram direct message attributed to Terpstra asserting that Lumetallix had a "granted patent" and that Ritter was infringing it. A true and correct copy is attached as **Exhibit E**.

37. Plaintiffs have also preserved LinkedIn posts and other commercial statements in which Defendants represented that Lumetallix had patent rights, patent grants, or equivalent exclusionary rights that would prevent Plaintiffs from selling their competing product. A true and correct copy of one such post is attached as **Exhibit F**.

38. Defendants further published on the United States-facing website lumetallixusa.com a commercial statement representing that "the core of Lumetallix is a patented chemical process," asserting that Lumetallix had been "copied and counterfeited," and directing United States consumers to purchase only from "authorized sellers." A true and correct copy of that page is attached as **Exhibit Q**.

39. Those statements were materially false or misleading because no issued United States patent granted Defendants the right to exclude Plaintiffs from selling the accused product in the United States, and Defendants' pending patent applications were subject to pending examination and/or rejection, as reflected in **Exhibits H and I**.

40. Plaintiffs further allege that Defendants caused false patent complaints or notices to be made to at least one commercial platform in the United States, including a Walmart patent-claim notice directed at a United States seller. A true and correct copy is attached as **Exhibit G**.

41. At all relevant times, no issued United States patent existed that granted Defendants the right to exclude Plaintiffs from selling the competing lead-test product at issue.

42. Plaintiffs have preserved a March 19, 2026 USPTO non-final office action rejecting all claims of U.S. Patent Application Serial No. 18/285,431. A true and correct copy is attached as **Exhibit H**.

43. Plaintiffs have also preserved records concerning the status of the related European application and the examining authority's adverse novelty position with respect to at least claim 1, as reflected in **Exhibit I**. Plaintiffs allege that Defendants' commercial statements materially overstated the existence, scope, and enforceability of any patent rights relevant to Plaintiffs' United States sales.

44. Defendants' patent-status statements were false or misleading because they conveyed to consumers, platforms, distributors, and business counterparties that Defendants held issued, enforceable patent rights that they did not in fact hold.

**D. Defendants Made False or Misleading Product-Composition, Lawful-Sale, and Comparative-Performance Statements**

45. Plaintiffs allege that Defendants marketed and sold the Lumetallix product in United States commerce while failing to disclose the presence of methylammonium bromide in product-facing materials, and while making commercial statements that conveyed, expressly or by implication, that the product was lawfully sellable and otherwise proper for United States distribution.

46. Plaintiffs further allege that Defendants omitted the chemical identity from labels, safety documentation, listings, and other commercial materials while simultaneously attacking Plaintiffs' competing product as unlawful, unauthorized, or not properly sellable.

47. Defendants' omission of methylammonium bromide from their own commercial materials, together with their contemporaneous use of compliance-based accusations against Fluoro-

Spec in the same marketplace, supports a strong inference that Defendants knew or recklessly disregarded the misleading nature of their own marketplace statements. On information and belief, the same actors who challenged Fluoro-Spec's regulatory standing were marketing a competing lead-detection product while concealing a material ingredient from product-facing materials directed to United States consumers, distributors, and commercial buyers.

48. Those omissions and related statements were materially misleading because they conveyed to consumers, distributors, and platforms that Defendants' own product was compliant, proper, and fairly comparable in the market while concealing a material fact about product composition and lawful sale.

49. Plaintiffs will rely on documentary evidence, regulatory records, product materials, and other proof showing both the presence of methylammonium bromide in the Lumetallix product and Defendants' failure to disclose it in commercial materials.

50. Defendants also advertised, on the Amazon listing and in other United States commercial channels, that the Lumetallix product was "10,000x more sensitive than swabs." **Exhibit A**.

51. Plaintiffs also allege that Defendants used comparable superiority claims in other channels, including statements that the Lumetallix product was "1,000x more sensitive than traditional swab tests." A true and correct copy of such a statement is attached as **Exhibit J**.

52. Those statements are specific, measurable, comparative claims about product performance, not vague statements of opinion or puffery.

53. Plaintiffs allege that Defendants lacked substantiation for those claims and that the claims were false or misleading as made, including because they conveyed a level of real-world comparative performance that Defendants could not support.

54. Plaintiffs will rely on the challenged statements themselves, documentary evidence, technical materials, and expert proof regarding the product chemistry, product performance, and the meaning of the comparative sensitivity representations. Any expert declaration submitted in support of provisional relief may be submitted separately.

**E. Defendants Used False Statements to Disrupt Plaintiffs' Commercial Relationships**

55. Plaintiffs had and have commercial relationships and expectancies with United States counterparties, including distributors, promotional partners, and marketplace channels.

56. Plaintiffs allege that Defendants used false patent-status statements, false or misleading product-composition and lawful-sale messaging, and other false or misleading commercial statements to disrupt those relationships.

57. Plaintiffs had an advertising arrangement with Tamara Rubin and/or her business in the amount of $90,000. Plaintiffs preserved the invoice or agreement underlying that arrangement and a communication in which Rubin repudiated or refused to proceed after being told, directly or indirectly, that Defendants possessed valid international patent rights that barred Plaintiffs' competing activities. True and correct copies are attached as **Exhibits K and L**.

58. The Rubin arrangement was lost when Rubin repudiated or declined to proceed with the advertising arrangement after receiving the patent-rights assertions described above. Plaintiffs seek recovery for that identified lost business opportunity in the amount of $90,000.

59. The communication preserved as **Exhibit L** reflects that Rubin's repudiation of the advertising arrangement was directly traceable to false patent-rights representations she had received, directly or indirectly through Defendants' commercial communications, that Fluoro-Spec's competing product was subject to valid patent exclusion. **Exhibit L** identifies no contractual breach by Fluoro-Spec, no competing offer, no pricing dispute, and no independent business reason for the repudiation. At no time material to Rubin's repudiation did any issued United States patent exist granting Defendants the right to bar Fluoro-Spec's sales. The later USPTO non-final office action attached as Exhibit H further confirms that Defendants' U.S. patent rights remained unissued and subject to examination. Plaintiffs therefore allege that the loss of the $90,000 Rubin advertising arrangement was the direct and proximate result of Defendants' false assertion that Fluoro-Spec's product was subject to valid patent exclusion, a right Defendants did not possess.

60. On April 1, 2026, Fluoro-Spec entered into a written Purchase Agreement with Master Labs LLC, a New York commercial counterparty, for the sale of approximately $42,000 of Fluoro-Spec product. A true and correct copy of that agreement is attached as **Exhibit M**.

61. On April 14, 2026, Buyserd sent a demand letter to Master Labs LLC in New York seeking to stop Master Labs from dealing in Plaintiffs' product and asserting false or misleading legal and factual grounds for that demand. A true and correct copy is attached as **Exhibit N**.

62. On information and belief, the April 14, 2026 communication to Master Labs included false or misleading statements concerning patent rights, counterfeiting, copyright, regulatory status, litigation posture, Plaintiffs' right to continue commercial performance, and the comparative propriety of Defendants' own product in the marketplace.

63. The April 14, 2026 communication was directed to a commercial counterparty in New York, not to a court. It was sent to influence Master Labs' commercial conduct and to disrupt performance of an existing contract, not to communicate with a tribunal or to advance any adjudicative process.

64. Plaintiffs have preserved the Master Labs communication, Plaintiffs' same-day response and indemnification letter, and a preservation demand sent to Buyserd and related parties. True and correct copies of Plaintiffs' response and indemnification letter and preservation demand are attached as **Exhibits O and P**.

65. The Buyserd Letter (**Exhibit N**) contained false or misleading representations concerning, among other things: (a) patent rights, by asserting that Defendants held enforceable patent rights barring Fluoro-Spec's sale of its lead-detection product; (b) counterfeiting, by asserting that Fluoro-Spec's product constituted a counterfeit of Defendants' product; (c) copyright, by asserting that Fluoro-Spec's commercial materials infringed Defendants' claimed rights; (d) regulatory status, by asserting that Fluoro-Spec's product was not properly authorized for sale in the United States; and (e) litigation posture, by invoking pending proceedings in a manner designed to convey to Master Labs that continued dealing with Fluoro-Spec carried legal risk. Plaintiffs allege that each of those representations was false or misleading when made.

66. The Buyserd Letter also disclosed to Master Labs the existence and purported effect of a private confidentiality agreement between the parties. To the extent applicable under the terms of that agreement, Defendants were not authorized to disclose its existence or terms to a commercial third party without Plaintiffs' consent. Plaintiffs allege that Defendants disclosed that agreement to Master Labs without consent and for the purpose of suggesting

that Fluoro-Spec's commercial activities were legally encumbered or subject to immediate legal jeopardy. That unauthorized disclosure, if proven, constitutes additional wrongful conduct supporting Count Three.

67. The Buyserd Letter was directed to Master Labs thirteen days after execution of the April 1, 2026 Purchase Agreement, supporting the inference that Defendants identified a specific commercial relationship and acted promptly to disrupt performance through false and misleading means. Plaintiffs rely on that conduct as evidence of intentional and wrongful interference and, to the extent permitted by law, will seek punitive damages on the state-law claims based on the nature and willfulness of Defendants' conduct.

68. Defendants' conduct toward Master Labs was intended to procure the suspension, breach, or impairment of a specific New York contract and commercial relationship. The Master Labs relationship was targeted and threatened when Defendants' April 14, 2026 communication sought to halt or disrupt performance of the April 1, 2026 Purchase Agreement. Plaintiffs plead this conduct as tortious interference with prospective business relations and, in the alternative, as attempted interference with contractual performance to the extent recognized under applicable law. Plaintiffs seek recovery for the resulting impairment of that approximately $42,000 commercial relationship.

**F. Plaintiffs Suffered Commercial Harm**

69. Plaintiffs and Defendants are direct commercial competitors in the same general market.

70. Plaintiffs were injured in their commercial interests in sales and reputation by Defendants' false patent-status statements, false or misleading product-composition and lawful-sale messaging, false comparative advertising, and targeted interference with Plaintiffs' channels of trade.

14

71. Plaintiffs' harm includes impairment of specific commercial relationships, loss of identified business opportunities, diversion of sales, harm to marketplace position, and damage to reputation in the relevant market.

72. Plaintiffs seek damages only for losses sustained by the Plaintiff or Plaintiffs that actually incurred such losses. Fluoro-Spec seeks damages relating to the Master Labs Purchase Agreement and product sales. Spirochaete seeks damages to the extent its business, reputation, intellectual property, or commercial relationships were directly harmed. Ritter seeks damages only for individualized reputational or personal commercial harm not duplicative of entity losses.

73. Plaintiffs specifically allege loss or impairment of: (a) the $90,000 Rubin advertising arrangement, **Exhibits K and L**; (b) the approximately $42,000 Master Labs commercial relationship, **Exhibits M through P**; and (c) additional sales and marketplace opportunities diverted by false patent-status statements, false or misleading product-composition and lawful-sale messaging, and false comparative-performance statements, including those reflected in **Exhibits A, F, G and Q**.

74. Plaintiffs do not allege that every lost sale during the relevant period was caused by Defendants. Rather, Plaintiffs seek recovery for the incremental commercial harm proximately caused by Defendants' false and misleading marketplace statements and interference.

75. Plaintiffs also seek injunctive and corrective relief because Defendants' false statements continue to threaten ongoing harm in the marketplace.

**COUNT ONE**

**FALSE ADVERTISING UNDER THE LANHAM ACT**
**15 U.S.C. § 1125(a)(1)(B)**

15

**(Against Defendants Lumetallix Holding B.V., Lumetallix B.V., Terpstra, Obtainium LLC, and Schiff)**

76. Plaintiffs repeat and reallege paragraphs 1 through 75.

77. The foregoing Defendants used in commerce false or misleading descriptions of fact and false or misleading representations of fact in commercial advertising or promotion concerning their goods, services, and commercial activities.

78. Those representations included, without limitation, statements made in marketplace-facing advertising and promotion, as distinguished from Defendants' separate targeted interference communications alleged elsewhere herein:

a. statements in commercial promotion that Defendants possessed a granted patent or enforceable patent rights barring Plaintiffs' competing conduct, including the statements reflected in **Exhibits E, F and Q**;

b. statements in commercial promotion that Plaintiffs were infringing such rights, including the statement reflected in **Exhibit E**;

c. statements in commercial promotion that the Lumetallix product was "10,000x more sensitive than swabs" and similarly superior to traditional swab tests, including the statements reflected in **Exhibit A** and **Exhibit J**; and

d. statements and omissions in marketplace-facing commercial promotion that conveyed Defendants' product was properly and lawfully sellable in the United States while concealing a material fact about product composition.

79. The challenged statements and omissions were either literally false or, at minimum, misleading in context.

80. The challenged statements and omissions were material because they concerned patent exclusivity, legal right to sell, product composition, lawful sale in the United States,

16

comparative product performance, and other matters likely to influence purchasing, distribution, listing, endorsement, or promotional decisions.

81. Plaintiffs have been injured in their commercial interests in sales and reputation as a direct and proximate result of those false or misleading statements and omissions.

82. The foregoing Defendants' conduct was willful, deliberate, and undertaken to obtain a competitive advantage in the United States market.

83. Plaintiffs are entitled to damages, Defendants' profits to the extent permitted by law and equity, injunctive relief, corrective advertising, costs, and, if this is an exceptional case, attorneys' fees.

### COUNT TWO

### INJURIOUS FALSEHOOD / TRADE LIBEL
**(New York Common Law)**
**(Against Defendants Lumetallix Holding B.V., Lumetallix B.V., Terpstra, Obtainium LLC, Schiff, and Buyserd)**

84. Plaintiffs repeat and reallege paragraphs 1 through 75.

85. Defendants published false statements disparaging Plaintiffs' goods, business, and right to sell, including false statements that Defendants possessed patent rights that barred Plaintiffs' sales, false statements directed to commercial counterparties that Plaintiffs' goods were unauthorized, infringing, prohibited, or otherwise not properly sellable, and false or misleading statements that concealed material facts about Defendants' own product composition and lawful sale while casting Plaintiffs as the noncompliant market participant.

86. Those statements were made with knowledge of falsity or in reckless disregard of the truth.

87. Those statements were made to interfere with Plaintiffs' business and divert sales to Defendants.

88. As a direct result of those statements, Plaintiffs suffered special damages, including but not limited to: (a) the loss or impairment of the $90,000 Rubin advertising arrangement, **Exhibits K and L**; (b) the loss or impairment of the approximately $42,000 Master Labs relationship, **Exhibits M through P**; and (c) additional identifiable lost sales, if any, that Plaintiffs will quantify through contemporaneous business records.

89. Plaintiffs are entitled to compensatory damages, punitive damages to the extent permitted by law, and injunctive relief.

## COUNT THREE

### TORTIOUS INTERFERENCE WITH CONTRACT AND/OR PROSPECTIVE ECONOMIC ADVANTAGE
### (New York Common Law)
### (Against Defendants Lumetallix Holding B.V., Lumetallix B.V., Terpstra, and Buyserd)

90. Plaintiffs repeat and reallege paragraphs 1 through 75.

91. Fluoro-Spec had a valid written contract or binding commercial relationship with Master Labs LLC, entered on or about April 1, 2026, for the sale of approximately $42,000 of Fluoro-Spec product. Exhibit M.

92. Defendants knew of that relationship or intentionally targeted it after learning of Master Labs' resale of Fluoro-Spec product.

93. Defendants intentionally sought to procure the breach, suspension, delay, or nonperformance of that relationship by sending the April 14, 2026 communication into New York containing false and misleading statements and threats directed at continued performance. Exhibit N.

94. Defendants acted without justification and used wrongful means, including false factual and legal assertions concerning patent rights, infringement, copyright, regulatory status, and Plaintiffs' right to sell.

18

95. Defendants' conduct impaired, threatened, and chilled Fluoro-Spec's commercial relationship with Master Labs. Plaintiffs therefore seek damages for tortious interference with prospective business relations and economic advantage.

## COUNT FOUR

### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS
(New York Common Law)
(Against Defendants Lumetallix Holding B.V., Lumetallix B.V., Terpstra, Obtainium LLC, Schiff, and Buyserd)

96. Plaintiffs repeat and reallege paragraphs 1 through 75.

97. Plaintiffs had prospective business relations and commercial expectancies with distributors, promotional counterparties, platforms, and customers, including but not limited to the Rubin arrangement and marketplace opportunities.

98. Defendants knew of those expectancies.

99. Defendants interfered with those expectancies by wrongful means, including knowingly false representations of patent status, false claims that Plaintiffs lacked the legal right to sell, false or misleading complaints to platforms, false or misleading product-composition and lawful-sale messaging, and other false commercial statements directed to intermediaries.

100. Defendants acted through independently wrongful conduct, including false commercial speech and false statements directed to third parties to disrupt Plaintiffs' business relations.

101. Plaintiffs were injured as a result.

## COUNT FIVE

### DECLARATORY JUDGMENT
28 U.S.C. §§ 2201–2202

19

**(Against Defendants Lumetallix Holding B.V. and Lumetallix B.V.)**

102.    Plaintiffs repeat and reallege paragraphs 1 through 75.

103.    An actual controversy exists between Plaintiffs and the Lumetallix defendants concerning whether Defendants presently possess issued United States patent rights that bar Plaintiffs' sale of the competing lead-test product at issue.

104.    Defendants have asserted, directly or indirectly, that they possess such rights and have used those assertions to threaten, deter, or disrupt Plaintiffs' commercial relationships, including through the statements reflected in **Exhibits E, F, G and Q**.

105.    Plaintiffs contend that, at the time of the challenged statements and as of the filing of this action, no issued United States patent granted Defendants the right to exclude Plaintiffs from the sales activity at issue. **Exhibits H and I**.

106.    Plaintiffs seek a declaration that, on the facts alleged herein, Defendants do not hold an issued United States patent that grants them the right to prevent Plaintiffs from selling the competing lead-test product identified in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment as follows:

A. Awarding damages on Count One in an amount to be determined at trial;

B. Awarding Defendants' profits to the extent permitted by 15 U.S.C. § 1117 and equitable principles;

C. Awarding compensatory damages on the state-law claims in an amount to be determined at trial;

D. Awarding punitive damages on the state-law claims to the extent permitted by law;

20

E. Issuing preliminary and permanent injunctive relief prohibiting Defendants from making false statements that they possess issued patent rights barring Plaintiffs' sales, from making false comparative sensitivity claims not supported by competent substantiation, and from making false complaints or threats to commercial counterparties based on nonexistent patent rights or materially misleading product-composition and lawful-sale messaging;

F. Requiring Defendants to issue corrective notices to any platform, distributor, customer, reseller, or commercial counterparty to whom Defendants represented that Plaintiffs' product infringed an issued United States patent, was counterfeit, was unlawful to sell, or was otherwise legally prohibited, where such statement was false or misleading;

G. Entering declaratory relief as requested in Count Five;

H. Awarding costs;

I. Awarding attorneys' fees if this case is found to be exceptional under the Lanham Act or otherwise authorized by law; and

J. Awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: April 24, 2026
New York, New York

Respectfully submitted,

*Dmitriy Ishimbayev*

Dmitriy Ishimbayev, Esq.
Ishimbayev Law Firm, P.C.
1 World Trade Center, Suite 8500
New York, NY 10007
Tel: +1-212-220-6548
di@ishimbayev.com
Counsel for Plaintiffs