**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF NEW YORK**

SPIROCHAETE RESEARCH LABS, LLC; FLUORO-SPEC INC.; and ERIC C. RITTER, individually,

Plaintiffs,

v.

LUMETALLIX HOLDING B.V.;
LUMETALLIX B.V.;
XANDER TERPSTRA;
OBTAINIUM LLC;
JOHN SCHIFF; and
ADRIAAN N.A. BUYSERD,

Defendants.

Case No. 2:26-cv-02461-SJB-LGD

FIRST AMENDED COMPLAINT
JURY TRIAL DEMANDED

Plaintiffs file this First Amended Complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B). No Defendant has served an answer or filed a motion under Rule 12(b), (e), or (f). To the extent the pre-motion letters at Docket Entries 25, 26, and 27 are treated as timely service of Rule 12 motions under Section VI.I.2 or VI.I.4 of the Court's Individual Practices, this amendment is filed within 21 days of service of the earliest such letter and is timely under Rule 15(a)(1)(B) for that independent reason. Defendants Obtainium LLC and John Schiff have separately consented in writing to this amendment. See Fed. R. Civ. P. 15(a)(2); DE 27 at 1.

Plaintiffs Spirochaete Research Labs, LLC ("Spirochaete"), Fluoro-Spec Inc. ("Fluoro-Spec"), and Eric C. Ritter ("Ritter"), by their attorney, allege, on personal knowledge as to themselves and their own acts, and on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is an action arising from false commercial statements and targeted interference with Plaintiffs' United States sales channels for lead-detection test kits.

2. Plaintiffs and Defendants compete in the United States market for perovskite-based lead-detection test kits marketed to consumers and other purchasers.

3. Plaintiffs allege that Defendants used false and misleading statements in commercial advertising and promotion, including statements that Defendants' product was "patented and trademarked," statements that Defendants possessed a "valid international patent" enforceable against Plaintiffs, statements that Defendants' Lumetallix product is presently "patented," statements that Plaintiffs were infringing such rights, comparative statements that Defendants' product was "10,000x more sensitive that [sic] swabs," and false or misleading product-composition and lawful-sale messaging concerning the chemical contents of Defendants' product.

4. Plaintiffs further allege that Defendants used those statements to disrupt Plaintiffs' commercial relationships and channels of trade, including by directing false communications to online platforms, commercial intermediaries, and a New York distributor, and by operating a network of paid United States promoters who disseminated false origin and efficacy claims that drove sales to Defendants.

5. The central monetary remedy Plaintiffs seek in this action is disgorgement of Defendants' United States profits earned through the challenged false advertising under 15 U.S.C. § 1117, together with statutory damages under 35 U.S.C. § 292, damages for diversion of United States

sales and marketplace position, declaratory and injunctive relief, corrective advertising and corrective notice, costs, and such other relief as the Court deems just and proper.

**PARTIES**

6. Plaintiff Spirochaete is a New York limited liability company with operations in Suffolk County, New York.

7. Plaintiff Fluoro-Spec is a Delaware corporation authorized to do business in New York, with its principal place of business at 9 Technology Drive, East Setauket, New York 11733.

8. Plaintiff Ritter is an individual residing in Suffolk County, New York. Ritter is the founder and principal of Spirochaete and Fluoro-Spec.

9. At all relevant times, Ritter conducted the business activities at issue from Suffolk County, New York. Fluoro-Spec conducted the product sales and commercial relationships described herein and sustained the diverted-sales and marketplace harm described in this Complaint. Plaintiffs seek recovery only for losses sustained by the Plaintiff that incurred them.

10. Defendant Lumetallix Holding B.V. is a Dutch entity with its principal office in Amsterdam, the Netherlands. On information and belief, it holds or claims rights relating to the Lumetallix brand and the patent applications at issue in this action.

11. Defendant Lumetallix B.V. is a Dutch entity with its principal office in Amsterdam, the Netherlands. On information and belief, it manufactures, markets, ships, and/or licenses the competing Lumetallix lead-testing kit for sale in the United States.

12. Defendant Xander Terpstra is an individual domiciled in the Netherlands. Terpstra is publicly held out, by Defendants' own team page at www.lumetallix.com and by Terpstra's own

LinkedIn profile, as a co-founder of the Lumetallix business and, since January 2024, as the Chief Executive Officer of Lumetallix. On information and belief, Terpstra is the person in charge of Defendant Lumetallix B.V.'s United States-facing operations, including its Amazon.com direct-sale account, its distributor relationship with Defendant Obtainium LLC, and its United States product-distribution logistics.

13. Defendant Obtainium LLC is a limited liability company with a business address at 209 E. 37th Street, Garden City, Idaho 83714. On information and belief, Obtainium is the United States distributor and Amazon seller of record for the Lumetallix product and operates the United States-facing website lumetallixusa.com. On information and belief, Obtainium derives substantial revenue from interstate commerce through nationwide sales of the Lumetallix product on Amazon and through lumetallixusa.com.

14. Defendant John Schiff is an individual residing in Idaho. On information and belief, Schiff controls Obtainium and personally directed, authorized, approved, or knowingly participated in the challenged commercial conduct alleged herein.

15. Defendant Adriaan N.A. Buyserd is an individual domiciled in the Netherlands who, on information and belief, acted as an agent or representative of the Lumetallix defendants in directing false commercial and legal threats to United States counterparties, including a New York distributor.

## JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Counts One and Three arise under the Lanham Act, 15 U.S.C. § 1125(a), Count Two arises under 35 U.S.C. §

292, over which this Court also has jurisdiction under 28 U.S.C. § 1338(a), and Count Six arises under 28 U.S.C. §§ 2201–2202.

17. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy.

18. This Court has personal jurisdiction over Lumetallix Holding B.V., Lumetallix B.V., and Terpstra under N.Y. C.P.L.R. § 302(a)(1) and § 302(a)(3) because those Defendants transacted business in New York and committed tortious acts outside New York causing injury in New York while purposefully directing commercial activity and false statements into New York and the broader United States market. On information and belief, those Defendants caused the Lumetallix product to be sold and shipped into this District through Obtainium and through the United States-facing website lumetallixusa.com; caused commercial statements to be disseminated into New York through Amazon, social-media channels, and platform complaints; and directed false patent-rights assertions toward commercial relationships centered in New York.

19. Plaintiffs documented at least two consummated sales of the Lumetallix product into East Setauket, New York in this District: (a) an Amazon order placed on December 24, 2025 and delivered on December 29, 2025 to 9 Technology Drive, East Setauket, New York 11733, attached as Exhibit B; and (b) a lumetallixusa.com order confirmed on January 13, 2026 and delivered on January 20, 2026 to the same address, attached as Exhibit C. These verification purchases confirmed that Defendants' storefronts offer, accept payment for, and ship the Lumetallix product into this District in the ordinary course, accompanied by the challenged

advertising claims, which were displayed to the New York purchaser at the point of sale and delivered into New York with the product.

20. In addition to the New York sales documented in the preceding paragraph, Defendants regularly and systematically sell the Lumetallix product into New York through channels within Defendants' own control. On information and belief, Defendant Lumetallix B.V. has sold the Lumetallix product directly to purchasers in the United States, including in New York, through its own Amazon.com seller account under the business name "Lumetallix B.V.," Science Park 104, 1098 XG Amsterdam, since on or about September 23, 2024. Since that date, Lumetallix B.V. has rotated the Amazon "buy box" for the Lumetallix kit with Obtainium and has been a seller of record on the Lumetallix reagent-refill listing since December 2024, holding the buy box for most of the listing's life and rotating it with Obtainium. On information and belief, since November 2023, the Lumetallix kit listing on Amazon.com has alone generated no fewer than approximately 9,894 unit sales in the United States, and has achieved best category rankings of number 105 in Industrial & Scientific and number 1 in Test Probes & Leads.

21. From on or about January through March 2024, Defendant Terpstra, using the electronic-mail address xander@lumetallix.com, personally directed the shipment of Lumetallix product into New York for United States distribution, including shipments to Ritter's business address in Hauppauge, New York, and personally handled United States customs, product-import, and Amazon-availability logistics for that New York-directed distribution. Those communications are in Plaintiffs' possession and are pleaded consistent with Rule 11.

22. This Court has personal jurisdiction over Obtainium LLC under N.Y. C.P.L.R. § 302(a)(1) because Obtainium transacted business in New York by offering the Lumetallix

product for sale and shipping it into this District, including to East Setauket, New York, and because Plaintiffs' claims arise directly from those transactions and the advertising attached to those sales. By stipulation so-ordered by the Court on June 17, 2026, Obtainium LLC consented to personal jurisdiction and venue in this District and waived any defense under Rule 12(b)(2) or 12(b)(3) and any objection based on forum non conveniens. Schiff did not consent to personal jurisdiction or venue; by the same stipulation, Schiff waived objections to the sufficiency of service of process and otherwise retained his defenses. Jurisdiction over Schiff rests on the allegations of this Complaint, as set forth in the following paragraph.

23. This Court has personal jurisdiction over Schiff under N.Y. C.P.L.R. § 302(a)(1) and § 302(a)(3)(ii). Under § 302(a)(1), Schiff transacted business in New York in person or through an agent: Obtainium offered the Lumetallix product for sale to New York purchasers and shipped it into this District through the interactive Amazon storefront for which it is the seller of record and through lumetallixusa.com; that New York business was conducted for Schiff's benefit, with his knowledge and consent, and under his control; and Plaintiffs' claims arise from those transactions and the advertising attached to them. Under § 302(a)(3)(ii), Schiff committed tortious acts outside New York, including authoring, approving, and publishing from Idaho the false advertising alleged in this Complaint; those acts caused injury to Plaintiffs in New York through the diversion of New York customers and New York sales away from Plaintiffs; Schiff expected or should reasonably have expected his acts to have consequences in New York, where the Lumetallix product was offered, sold, shipped, and advertised and where Plaintiffs compete; and, on information and belief, Schiff derives substantial revenue from interstate commerce, including through distributions from Obtainium funded by Obtainium's nationwide sales of the Lumetallix product.

24. This Court has personal jurisdiction over Buyserd under N.Y. C.P.L.R. § 302(a)(1) and § 302(a)(3) because, on April 14, 2026, he directed communications into New York for the purpose of inducing disruption of a New York commercial relationship, and the injury from that conduct was suffered in New York.

25. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this District, including Plaintiffs' business operations, Defendants' sales into this District, and Defendants' alleged interference with New York-centered commercial relationships.

## FACTUAL ALLEGATIONS

### A. The Parties Compete in the Same Market

26. Plaintiffs develop, market, and sell lead-detection products, including perovskite-based lead test kits sold through United States channels.

27. Defendants market and sell a directly competing product under the Lumetallix brand through online channels and a United States distribution structure.

28. On information and belief, Defendants' United States sales channel includes Amazon.com, the website lumetallixusa.com, a network of paid United States promoters, and United States-facing promotional communications directed to consumers, influencers, platforms, and commercial intermediaries.

29. Plaintiffs further allege that Defendants marketed and sold the Lumetallix product in the United States while failing to disclose the presence of methylammonium bromide in product-

facing materials and while using commercial messaging that conveyed, expressly or by necessary implication, that the product was proper and lawful for sale in the United States.

**B. Defendants Marketed the Lumetallix Product in the United States Through Obtainium**

30. At all relevant times, Obtainium was identified as the seller of record for the Lumetallix product on Amazon.

31. Plaintiffs obtained and preserved screenshots of the Amazon product listing for "Lumetallix The Original Glowing Lead Test," which listed the product as sold by Obtainium LLC and advertised, among other things, that the product was "10,000x more sensitive that [sic] swabs." A true and correct copy is attached as Exhibit A. Obtainium, as the Amazon seller of record, used the listing statements in commerce to sell the Lumetallix product for its own account and retained the ability to stop selling under that listing. The "1,000x more sensitive" variant of the sensitivity claim appeared on lumetallixusa.com, a channel that Obtainium and Schiff control.

32. Plaintiffs also obtained and preserved screenshots and order confirmations showing sales and deliveries of the Lumetallix product into East Setauket, New York. True and correct copies are attached as Exhibits B and C.

33. On information and belief, Schiff personally controlled or materially participated in the United States distribution and online sale of the Lumetallix product through Obtainium and lumetallixusa.com. A true and correct copy of the Lumetallix distributor page identifying Obtainium as the North America distributor is attached as Exhibit D.

34. On information and belief, Schiff personally writes, edits, reviews, approves, and publishes product listings and advertising copy on the Obtainium Amazon storefront and on the website lumetallixusa.com, which are the channels through which the false and misleading statements alleged in this Complaint are presented to United States consumers, distributors, and commercial buyers. On information and belief, Schiff also personally responds to customer inquiries and complaints through Amazon's seller-messaging system and through lumetallixusa.com, and personally authors, approves, or directs the comparative-performance representations, patent-rights messaging, and lawful-sale or regulatory-compliance messaging published through those channels. Obtainium's New York-directed sales and advertising activity was conducted for Schiff's direct financial benefit, with his knowledge and consent, and Schiff exercised control over that activity, personally supervising and controlling publication of the challenged statements through which the New York sales were solicited and consummated.

35. On information and belief, the challenged statements and acts were not isolated or accidental. They were part of a coordinated course of conduct among the Lumetallix defendants, their United States distributor Obtainium, Schiff, Buyserd, and the paid promoters described below, who used overlapping sales channels, overlapping patent-rights messaging, overlapping marketplace communications, and closely timed interventions with commercial counterparties to impair Plaintiffs' ability to compete in the United States market.

**C. Defendants Made False Patent-Status Statements**

36. Defendants made and caused to be made commercial statements that the Lumetallix product was “patented and trademarked,” that Lumetallix possessed valid patent rights enforceable against Plaintiffs, that the core process embodied in the Lumetallix product is

presently "patented," and that Plaintiffs were infringing such rights. Each such statement is attributed below to its speaker: Terpstra made the "patented and trademarked" and infringement statements reflected in Exhibit E; the Lumetallix entities and/or Terpstra made the "international patents" statements reflected in Exhibit F; on information and belief, the Lumetallix defendants caused the platform notice reflected in Exhibit G; and Obtainium and Schiff published the present-tense "patented" statement reflected in Exhibit Q, using advertising copy that, on information and belief, the Lumetallix defendants supplied or approved.

37. Plaintiffs have preserved, among other things, a March 15, 2024 Instagram direct message attributed to Terpstra, sent to a third party concerning Ritter, asserting that the Lumetallix product was "patented and trademarked" and that Ritter was infringing. A true and correct copy is attached as Exhibit E.

38. Plaintiffs have also preserved a LinkedIn post and other commercial statements in which the Lumetallix entities and/or Terpstra represented that Lumetallix had "international patents" or equivalent rights that would prevent Plaintiffs from selling their competing product. A true and correct copy of one such post is attached as Exhibit F.

39. Plaintiffs further allege that, on information and belief, the Lumetallix defendants caused false patent complaints or notices to be made to at least one commercial platform in the United States, including a Walmart patent-claim notice directed at a United States seller. A true and correct copy is attached as Exhibit G.

40. On the United States-facing website lumetallixusa.com, Obtainium and Schiff published a commercial statement representing that "the core of Lumetallix is a patented chemical process." On information and belief, the Lumetallix defendants supplied or approved the copy

for that statement. A true and correct copy of the page bearing this statement, captured on June 1, 2026, is attached as Exhibit Q. The statement describes the Lumetallix product as presently "patented," not as the subject of a pending application.

41. At all relevant times, no issued United States patent existed that granted Defendants the right to exclude Plaintiffs from selling the competing lead-test product at issue. No United States patent has issued in connection with the patent applications on which Defendants based their public assertions of patent rights.

42. The United States Patent and Trademark Office issued a non-final office action mailed March 19, 2026 in U.S. Patent Application Serial No. 18/285,431, rejecting all fifteen pending claims. A true and correct copy is attached as Exhibit H. That office action expressly addresses and considers third-party preissuance submissions filed by Ritter under 37 C.F.R. § 1.290. A true and correct copy of Ritter's third-party preissuance submission is attached as Exhibit U. The office action is non-final, and the application remains pending and unissued.

43. The European Patent Office issued a communication of the examining division dated February 9, 2026 in European Patent Application No. 22 720 443.5, in which the examining division objected, in a communication that is part of ongoing examination and not a final decision, that claim 1 lacks novelty over prior-art reference D8 (Yan 2019, disclosing the use of CH3NH3Br, methylammonium bromide, for the detection of Pb2+), and that the extension of the claimed subject matter to glass, metal, and plastic surfaces lacks an inventive step. A true and correct copy is attached as Exhibit I. In that communication, the examining division also raised the application's distinction between paper strips and painted surfaces as an issue going to the

scope of the prior art. As of the filing of this Complaint, no patent has issued on European Patent Application No. 22 720 443.5.

44. The patent applications on which Defendants' public assertions of patent rights are based were not owned by any Lumetallix entity during the period in which Defendants asserted that the Lumetallix product was “patented and trademarked” or that it is presently “patented.” According to the European Patent Register file for European Patent Application No. 22 720 443.5 (published as EP4320427), the application was owned by Stichting Nederlandse Wetenschappelijk Onderzoek Instituten (institute AMOLF), a Dutch research institute affiliated with the Netherlands Organisation for Scientific Research, until July 18, 2025. A true and correct copy of the transfer-of-rights submission filed with the European Patent Office on July 18, 2025 is attached as Exhibit AA.

45. On July 18, 2025, the European Patent Application was transferred not to the operating Defendant Lumetallix B.V. but to Defendant Lumetallix Holding B.V., a Dutch entity with a registered office at Science Park 104, 1098 XG Amsterdam, that, on information and belief, has zero employees and conducts no operations other than holding assets. The European Patent Office's communication of registration of the transfer, dated August 5, 2025, states that the registration “has taken effect on 18.07.2025.” Corresponding assignment records for the United States family member of that application were recorded on or about July 30, 2025.

46. Defendants completed the transfer of the patent-application family to Defendant Lumetallix Holding B.V. ten (10) days before Buyserd's July 28, 2025 letter-before-claim to Ritter, and approximately fifteen (15) months after Terpstra's March 15, 2024 “patented and trademarked” direct message, sent to a third party concerning Ritter. On information and belief,

the signed conveyance instrument identified in the European Patent Office submission as "T0008-001EP Deed.pdf" was executed by Terpstra and Jeroen van den Bosch, or one of them, on behalf of the transferee Defendant Lumetallix Holding B.V.

47. Plaintiffs plead the facts in the three immediately preceding paragraphs as evidence, among other things, (a) that during the entire 2024 period in which Defendants asserted that the Lumetallix product was "patented and trademarked" and "patented," no Lumetallix entity even owned the pending patent application from which those assertions purportedly derived; (b) of Defendants' knowledge of the difference between an issued patent and a pending application, and their deceptive intent under 35 U.S.C. § 292(a); and (c) of the corporate-form arrangement by which Defendants parked the disputed intellectual property in a zero-employee holding company shortly before the commencement of the campaign of legal threats at issue.

48. The bottle on which Defendants market the Lumetallix product bears the legend "patent pending." That marking is not the subject of Plaintiffs' false-marking claim under Count Two; the false-marking claim is directed solely to the website statement that the core process is "patented," which is materially different in meaning and effect.

49. Defendants' patent-status statements were false or misleading because they conveyed to consumers, platforms, distributors, and business counterparties that Defendants held issued, enforceable patent rights that they did not in fact hold, at a time when the applications on which those statements rested had been the subject of objections that the claimed subject matter is not novel and not inventive, and had not issued in any jurisdiction relevant to Plaintiffs' United States sales.

50. On July 9, 2026, counsel for Obtainium and Schiff filed a pre-motion letter with the Court, Docket Entry 27. In that letter, Obtainium and Schiff state that Obtainium "has already taken down any reference within its control" to the Lumetallix kits being patented, and concede that the patent applications at issue "remain pending." Those statements admit Obtainium's control over the challenged content on lumetallixusa.com and confirm that no patent has issued on the applications from which the "patented" statement derived. The removal of the challenged statement after this action was commenced also evidences the statement's materiality. That removal is voluntary cessation and does not moot Plaintiffs' claims for injunctive relief.

**D. Defendants Made False or Misleading Product-Composition, Lawful-Sale, and Comparative-Performance Statements**

51. Plaintiffs allege that Defendants marketed and sold the Lumetallix product in United States commerce while failing to disclose the presence of methylammonium bromide in product-facing materials, and while making commercial statements that conveyed, expressly or by implication, that the product was lawfully sellable and otherwise proper for United States distribution.

52. Plaintiffs further allege that Defendants omitted the chemical identity from labels, safety documentation, listings, and other commercial materials while simultaneously attacking Plaintiffs' competing product as unlawful, unauthorized, or not properly sellable.

53. Defendants have prepared and issued an English-language safety data sheet for the Lumetallix product for United States commercial distribution and safety-compliance purposes. That safety data sheet, dated by Defendants and bearing Defendants' own trade dress and product identifiers, states, verbatim: "Contains: Isopropyl alcohol." and "The product does not contain

(other) ingredients which are classified…" Defendants have never published that safety data sheet on either of their own consumer-facing domains, www.lumetallix.com or lumetallixusa.com, and their Dutch-language frequently-asked-questions page states that the safety data sheet is "available upon request." On information and belief, Defendants distribute the safety data sheet on request; the document was so provided, on request, to a purchaser through the Lumetallix Amazon.com storefront in the ordinary course. The only publicly hosted copy of that same safety data sheet is on the website of Defendants' United States coalition partner, unleadedkids.org, from which it was captured on May 17, 2026. A true and correct copy of the safety data sheet, as captured from unleadedkids.org, is attached as Exhibit V.

54. The safety-data-sheet representation described in the preceding paragraph is false or misleading because the Lumetallix product contains methylammonium bromide (CAS No. 6876-37-5), the chemical that produces the advertised reaction with lead, and that ingredient is not disclosed in the safety data sheet or in any other product-facing document Defendants direct at United States purchasers. Contemporaneously with that representation, Defendants marketed the Lumetallix product to United States consumers, on their own storefronts, as safe and non-toxic. On www.lumetallix.com, Defendants answered the FAQ question "Is the reagent safe to use?" by stating that "We have consulted with experts on chemical safety, and the reagent is safe to use with suitable precautions," and elsewhere on that site described the product as "Safe to use" (Exhibit W). On lumetallixusa.com, Defendants stated that their process "combines a nontoxic reagent liquid" with a specially tuned UV light, stated that "Our nontoxic reagent and UV light make lead detection easy and safe," and presented to consumers the FAQ question heading "IS LUMETALLIX SAFE TO USE AROUND CHILDREN AND PETS?" (Exhibit X). On shop.lumetallix.com, Defendants described the Lumetallix kit as "Safe to use: Non-toxic and

Environmentally Friendly" (Exhibit Y). True and correct copies of those statements, captured from Defendants' properties at www.lumetallix.com, lumetallixusa.com, and shop.lumetallix.com on July 10, 2026, are attached as Exhibits W, X, and Y, respectively. On May 20, 2026, a representative of Defendants presented to the Lead-Free Promise Project Full Coalition, in a written meeting summary circulated to the coalition on May 21, 2026, that "Lumetallix Lead test kits are non-toxic (isopropyl alcohol and 2% active ingredient)." A true and correct copy of that summary is attached as Exhibit Z. In each of the statements described in this paragraph, Defendants characterized the safety or composition of the reagent to United States consumers, distributors, and industry counterparties without identifying methylammonium bromide.

55. On or after the initial filing of this action, Defendants have engaged in post-suit revisions to their public United States-facing marketing. Defendants' counsel admitted, at Docket Entry 27 at 1 n.1, that Obtainium "has already taken down any reference within its control" to the Lumetallix product being "patented," following commencement of this action. Plaintiffs plead this conduct as evidence of Defendants' knowledge of the misleading nature of the representations described in the preceding paragraphs. Separately, on January 2, 2026, Ritter filed a consumer complaint with the New York State Attorney General (submission #1-1176571252) recounting Defendants' concealment of the Lumetallix product's methylammonium bromide composition and Defendants' misrepresentations of United States patent status.

56. Defendants' omission of methylammonium bromide from their own commercial materials, together with their contemporaneous use of compliance-based accusations against Fluoro-Spec in the same marketplace, supports a strong inference that Defendants knew or recklessly disregarded the misleading nature of their own marketplace statements. On

information and belief, the same actors who challenged Fluoro-Spec's regulatory standing were marketing a competing lead-detection product while concealing a material ingredient from product-facing materials directed to United States consumers, distributors, and commercial buyers.

57. Those omissions and related statements were materially misleading because they conveyed to consumers, distributors, and platforms that Defendants' own product was compliant, proper, and fairly comparable in the market while concealing a material fact about product composition and lawful sale.

58. Plaintiffs will rely on documentary evidence, regulatory records, product materials, and other proof showing both the presence of methylammonium bromide in the Lumetallix product and Defendants' failure to disclose it in commercial materials.

59. Obtainium, as the Amazon seller of record, and Schiff advertised, on the Amazon listing and in other United States commercial channels, that the Lumetallix product was “10,000x more sensitive that [sic] swabs,” using advertising copy that, on information and belief, the Lumetallix defendants supplied or approved. Exhibit A.

60. Plaintiffs also allege that Defendants used comparable superiority claims in other channels, including the statement, published on lumetallixusa.com, a channel that Obtainium and Schiff control, that the Lumetallix product was “1,000x more sensitive than traditional swab tests.” A true and correct copy of such a statement is attached as Exhibit J.

61. Those statements are specific, measurable, comparative claims about product performance, not vague statements of opinion or puffery. Sensitivity, as applied to a lead-detection test, is the test's limit of detection, a defined analytical parameter that can be measured

by standard laboratory methods, including graphite furnace atomic absorption spectrometry. The "swabs" referenced in the statements are sodium rhodizonate spot tests, whose detection capabilities are published. A specific numerical multiplier comparing the sensitivity of one test to another is accordingly an empirically testable factual claim capable of being proven true or false.

62. The claims were false or misleading as made. No test or measurement supports either published figure as a measure of the comparative performance of the Lumetallix product against swab tests as those products are used, and the claims misrepresent the product's real-world performance on painted surfaces as advertised.

63. Defendants' own published figures for the same product are ten times apart: the Amazon listing stated "10,000x more sensitive that [sic] swabs" (Exhibit A), while the statement reflected in Exhibit J said "1,000x more sensitive than traditional swab tests." That tenfold spread between Defendants' own published figures supports the inference that neither figure derives from any test or measurement.

**E. Defendants Operated a Network of Paid United States Promoters Who Disseminated False Claims About the Lumetallix Product**

64. On information and belief, the Lumetallix defendants compensated or otherwise materially supported a network of United States promoters to publish statements promoting the Lumetallix product to United States consumers. Plaintiffs plead the conduct of those promoters not as claims against the promoters themselves, who are not named as defendants in this action, but as evidence of the willful, knowing, and coordinated character of Defendants' own false advertising in the United States.

65. One such promoter, Chelsea Bernstein, publicly identifies herself in connection with the Lumetallix product as the "Lumetallix Lead Lady," operates the verified Instagram account @the.lead.lady (formerly @lumetallix.lead.lady), and maintains the public landing page linktr.ee/TheLeadLady. On that landing page, in the description accompanying her link titled "LUMETALLIX: The Test I Use (makes lead GLOW)," Bernstein represents that the Lumetallix product is "[t]he test that allowed us to catch our daughter's lead exposure 6 months early." That representation remained published as of at least July 23, 2026. A true and correct copy of the landing page bearing that statement is attached as Exhibit R.

66. Bernstein's representation that the Lumetallix product was used to detect her own child's lead exposure is false. Bernstein, in fact, purchased, used, and remediated her home using Plaintiffs' Fluoro-Spec product. Fluoro-Spec's business records (maintained in the ordinary course of business on the Fluoro-Spec/DetectLead Wix store) reflect the following completed, paid, and fulfilled orders to Chelsea Bernstein (00chilib@gmail.com), shipped to Dedham, Massachusetts: (a) Order No. 15403, dated May 28, 2024, for one Fluoro-Spec Spray Bottle Set (Fluoro-Spec's spray-bottle lead-test kit), $47.84; (b) Order No. 15559, dated June 2, 2024, for a Fluoro-Spec Abatement Pack, $265.63; and (c) Order No. 16724, dated July 13, 2024, for one Fluoro-Spec Spray Bottle Set and two Refill bottles (three units in total), $79.68. True and correct copies of those order records are attached as Exhibit T. The Fluoro-Spec Abatement Pack ordered on June 2, 2024 comprised ten test bottles, five ultraviolet flashlights, and lead-free reference cards, marketed by Fluoro-Spec under the line "Never fail a dust clearance again." The June 2, 2024 escalation to a $265 Abatement Pack, five days after the initial spray-bottle purchase, reflects active home remediation using the Fluoro-Spec product contemporaneous with Bernstein's public representations crediting Lumetallix.

67. In a publicly available comment dated March 26, 2026 on her Instagram post /p/DU9t34LDKUX/ (posted February 20, 2026), Bernstein acknowledged that she is paid to promote the Lumetallix product: “I do get paid to promote the lead test kit.” On information and belief, Bernstein sells the Lumetallix product through an affiliate link administered by or for the Lumetallix defendants. A true and correct copy of that acknowledgment is attached as Exhibit S.

68. On information and belief, Tamara Rubin, a United States promoter who maintains and uses a Lumetallix Amazon affiliate link, has continued to promote the Lumetallix product to United States consumers through that affiliate link from in or about March 2024 through the filing of this Complaint. Plaintiffs plead Rubin's affiliate promotion solely as evidence of Defendants' United States promoter network, and not to assert any claim against her in this action.

69. On information and belief, the Lumetallix defendants supplied affiliate links and promotional materials to Bernstein, Rubin, and other paid United States promoters, continued to compensate them through affiliate-link revenue and other consideration after the false content of those promoters' statements was apparent on the face of the promoters' own public conduct, and thereby benefited commercially from the dissemination of false origin and efficacy claims into the United States market. The specific terms of Defendants' agreements with their promoters, the content of Defendants' communications with them, and the payments and affiliate-link revenue at issue are within Defendants' possession and are to be established through discovery.

**F. Defendants Used False Statements to Disrupt Plaintiffs' Commercial Relationships**

70. Plaintiffs had and have commercial relationships and expectancies with United States counterparties, including distributors, promotional partners, and marketplace channels.

71. Plaintiffs allege that Defendants used false patent-status statements, false or misleading product-composition and lawful-sale messaging, and other false or misleading commercial statements to disrupt those relationships.

72. Defendants disseminated their false patent-rights assertions into Plaintiffs' commercial relationships, including a promotional and advertising relationship between Plaintiffs and Tamara Rubin and/or her business. At no time material to those communications did any issued United States patent exist that granted Defendants the right to bar Fluoro-Spec's sales. See Exhibit H (March 19, 2026 USPTO non-final office action rejecting all claims of U.S. Patent Application No. 18/285,431); Exhibit I (February 9, 2026 EPO examining-division communication objecting that the corresponding claims are not novel and not inventive). Plaintiffs preserved records of the Rubin relationship and of Defendants' patent-rights assertions reaching that relationship, attached as Exhibits K and L. Plaintiffs do not seek in this action any monetary recovery for losses arising from the Rubin relationship, and plead that relationship solely as evidence of the reach, willfulness, and intended effect of Defendants' false patent-rights statements.

73. On April 1, 2026, Fluoro-Spec entered into a written Purchase Agreement with Master Labs LLC, a New York commercial counterparty, for the sale of Fluoro-Spec product. A true and correct copy of that agreement is attached as Exhibit M.

74. On April 14, 2026, Buyserd sent a demand letter to Master Labs LLC in New York seeking to stop Master Labs from dealing in Plaintiffs' product and asserting false or misleading legal and factual grounds for that demand. A true and correct copy is attached as Exhibit N. The demand letter was copied to Jeroen van den Bosch at his Lumetallix electronic-mail address,

jeroen@lumetallix.com. As alleged in Paragraph 92 below, Jeroen van den Bosch is the sole member and director of VDB Holding B.V., one of the three Dutch besloten vennootschappen that are the registered directors of Defendant Lumetallix Holding B.V.

75. On information and belief, the April 14, 2026 communication to Master Labs included false or misleading statements concerning patent rights, counterfeiting, copyright, regulatory status, litigation posture, Plaintiffs' right to continue commercial performance, and the comparative propriety of Defendants' own product in the marketplace.

76. The April 14, 2026 communication was directed to a commercial counterparty in New York, not to a court. It was sent to influence Master Labs' commercial conduct and to disrupt performance of an existing contract, not to communicate with a tribunal or to advance any adjudicative process.

77. Plaintiffs have preserved the Master Labs communication, Plaintiffs' same-day response and indemnification letter, and a preservation demand sent to Buyserd and related parties. True and correct copies of Plaintiffs' response and indemnification letter and preservation demand are attached as Exhibits O and P.

78. The Buyserd Letter (Exhibit N) contained false or misleading representations concerning, among other things: (a) patent rights, by asserting that Defendants held enforceable patent rights barring Fluoro-Spec's sale of its lead-detection product; (b) counterfeiting, by asserting that Fluoro-Spec's product constituted a counterfeit of Defendants' product; (c) copyright, by asserting that Fluoro-Spec's commercial materials infringed Defendants' claimed rights; (d) regulatory status, by asserting that Fluoro-Spec's product was not properly authorized for sale in the United States; and (e) litigation posture, by invoking pending proceedings in a manner

designed to convey to Master Labs that continued dealing with Fluoro-Spec carried legal risk. Plaintiffs allege that each of those representations was false or misleading when made.

79. The Buyserd Letter was directed to Master Labs thirteen days after execution of the April 1, 2026 Purchase Agreement, supporting the inference that Defendants identified a specific commercial relationship and acted promptly to disrupt performance through false and misleading means. Plaintiffs rely on that conduct as evidence of intentional and wrongful interference and, to the extent permitted by law, will seek punitive damages on the state-law claims based on the nature and willfulness of Defendants' conduct.

80. Defendants' conduct toward Master Labs was intended to procure the suspension, breach, or impairment of a specific New York contract and commercial relationship. The Master Labs relationship was impaired when Defendants' April 14, 2026 communication sought to halt or disrupt performance of the April 1, 2026 Purchase Agreement. Plaintiffs do not seek in this action any monetary recovery for losses arising from the Master Labs relationship, and plead that relationship solely as a predicate wrongful act establishing tortious interference, the willful character of Defendants' campaign, and a basis for injunctive, corrective, and punitive relief.

**G. Plaintiffs Suffered Commercial Harm**

81. Plaintiffs and Defendants are direct commercial competitors in the same general market.

82. Plaintiffs were injured in their commercial interests in sales and reputation by Defendants' false patent-status statements, false or misleading product-composition and lawful-sale messaging, false comparative advertising, paid-promoter false advertising, and targeted interference with Plaintiffs' channels of trade.

83. Plaintiffs' harm includes diversion of sales, harm to marketplace position, and damage to reputation in the relevant market.

84. Plaintiffs have served the New York market with their competing lead-detection product on a continuing basis since March 11, 2024, through both direct-to-consumer web sales and Amazon.com sales. Between March 11, 2024 and July 6, 2026, Plaintiffs' Fluoro-Spec store, operating consecutively on the Wix and Shopify e-commerce platforms, completed and fulfilled no fewer than 1,885 paid orders shipped to New York destinations, comprising no fewer than 2,165 units. Separately, Plaintiffs have sold and shipped the Fluoro-Spec lead-detection product into New York through Amazon.com in every month for which Amazon.com order records are available. Business records supporting these figures are maintained by Plaintiffs in the ordinary course, on the Wix, Shopify, and Amazon Seller Central platforms respectively, and are available for production under an appropriate protective order.

85. Plaintiffs' first paid New York sale of the Fluoro-Spec lead-detection product occurred on March 11, 2024. Four days later, on March 15, 2024, in an Instagram direct-message exchange with a third party concerning Ritter, Terpstra sent the message attached as Exhibit E, asserting that the Lumetallix product was “patented and trademarked” and accusing Ritter of infringement. Plaintiffs were established in the New York market before the first act of Defendants' campaign of false patent-rights assertions, and Plaintiffs' New York-directed commerce has continued through the filing of this Complaint.

86. Plaintiffs seek recovery in this action for diverted and suppressed United States sales and marketplace opportunities sustained by Fluoro-Spec, Spirochaete, and Ritter, and for Defendants' profits attributable to the challenged false advertising under 15 U.S.C. § 1117, together with

statutory damages under 35 U.S.C. § 292. Plaintiffs do not seek in this action any monetary recovery for losses arising from the Rubin or Master Labs relationships, which are pursued, if at all, in separate proceedings.

87. Plaintiffs specifically allege diversion or suppression of: (a) United States sales and marketplace opportunities diverted by Defendants' false patent-status statements, false or misleading product-composition and lawful-sale messaging, false comparative-performance statements, and paid-promoter false advertising, including those reflected in Exhibits A, F, G, J, Q, and R; and (b) Defendants' profits earned through the challenged false advertising, recoverable under 15 U.S.C. § 1117. Plaintiffs incorporate Exhibits K through P as evidence of Defendants' intentional interference and the willful character of their conduct, and not as items of monetary recovery sought in this action.

88. Plaintiffs do not allege that every lost sale during the relevant period was caused by Defendants. Rather, Plaintiffs seek recovery for the incremental commercial harm proximately caused by Defendants' false and misleading marketplace statements and interference, and disgorgement of Defendants' profits earned through the challenged false advertising.

89. Plaintiffs also seek injunctive and corrective relief because Defendants' false statements continue to threaten ongoing harm in the marketplace.

**H. Terpstra's Public Role and Defendants' Corporate Structure**

90. On July 10, 2026, Defendant Terpstra's LinkedIn profile identified him as "Co-founder & CEO" of Lumetallix from January 2024 to the present, and as "Co-Founder & CCO" of Lumetallix from March 2023 to January 2024. A true and correct copy of that profile page is attached as Exhibit BB. On the same date, Defendants' www.lumetallix.com team page identified

Terpstra as "Co-founder & CEO." A true and correct copy of that team page is attached as Exhibit CC.

91. At all times material to Plaintiffs' claims from January 2024 forward, Terpstra was the person publicly held out as Lumetallix's chief executive. Terpstra personally asserted the Lumetallix companies' claimed patent rights in commerce and against Plaintiffs, including in the March 15, 2024 Instagram direct-message exchange with a third party concerning Ritter attached as Exhibit E, in which he asserted that the Lumetallix product was "patented and trademarked" and that Ritter was infringing. Terpstra also personally ran Defendants' United States product-distribution operations into New York during 2024, as alleged in Paragraph 21 above.

92. According to the certified Netherlands Chamber of Commerce (Kamer van Koophandel) records for Defendants and for the three Dutch besloten vennootschappen that are the registered directors of Defendant Lumetallix Holding B.V., attached as Exhibits DD through HH: (a) Defendant Lumetallix B.V.'s sole registered director is Defendant Lumetallix Holding B.V., and Lumetallix B.V. has an issued share capital of one euro and, on information and belief, has no employees; (b) Defendant Lumetallix Holding B.V.'s registered directors are three additional Dutch besloten vennootschappen, namely VDB Holding B.V. (Chamber of Commerce No. 72907398), Limosa B.V. (Chamber of Commerce No. 83742662), and Daedalus B.V. (Chamber of Commerce No. 83742700), each jointly authorized to bind the Holding, and each of which has zero employees according to its own certified Chamber of Commerce extract; (c) the sole member and director of VDB Holding B.V. is Jeroen van den Bosch, the sole member and director of Limosa B.V. is Lukas Helmbrecht, and the sole member and director of Daedalus B.V. is Willem Lieuwe Noorduin; (d) Lukas Helmbrecht and Willem Lieuwe Noorduin are the two named inventors on European Patent Application No. 22 720 443.5; and (e) no natural

person is registered as a director of either Defendant Lumetallix Holding B.V. or Defendant Lumetallix B.V.

93. On April 29, 2026, a duly authorized process server personally delivered a copy of the summons and Complaint in this action to Terpstra, in the Eastern District of Louisiana, at a public industry event Terpstra was attending on behalf of Lumetallix. On the same date, the same process server also delivered a copy of the summons and Complaint intended for Defendant Lumetallix B.V. to Terpstra as the person then in charge of, and acting for, Lumetallix B.V. The affidavit of service is on file at Docket Entry 15.

94. Plaintiffs plead the facts in the immediately preceding paragraphs to support, among other things, (a) personal jurisdiction over Defendant Lumetallix B.V. under N.Y. C.P.L.R. § 302(a)(1), based on Lumetallix B.V.'s own direct-seller conduct in New York identified in Paragraphs 20 through 21, conducted through Terpstra and Obtainium; and (b) the validity of service on Defendant Lumetallix B.V. under Federal Rule of Civil Procedure 4(h)(1)(B), which allows delivery to an "officer, a managing or general agent," on the ground that Terpstra was, at the time of service, the person in charge of Lumetallix B.V.'s United States-facing activities and was held out by Lumetallix B.V. as its chief executive.

**COUNT ONE**
FALSE ADVERTISING UNDER THE LANHAM ACT
15 U.S.C. § 1125(a)(1)(B)
(Against Defendants Lumetallix Holding B.V., Lumetallix B.V., Terpstra, Obtainium LLC, and Schiff)

95. Plaintiffs repeat and reallege paragraphs 1 through 94 as if fully set forth herein.

96. The foregoing Defendants used in commerce false or misleading descriptions of fact and false or misleading representations of fact in commercial advertising or promotion concerning their goods, services, and commercial activities.

97. Those representations included, without limitation: (a) statements in commercial promotion that the Lumetallix product was "patented and trademarked" and that Defendants possessed enforceable patent rights barring Plaintiffs' competing conduct, including the statement by Terpstra reflected in Exhibit E, the statements by the Lumetallix entities and/or Terpstra reflected in Exhibit F, and the platform notice that, on information and belief, the Lumetallix defendants caused, reflected in Exhibit G; (b) the United States-facing website statement, published by Obtainium and Schiff on lumetallixusa.com using advertising copy that, on information and belief, the Lumetallix defendants supplied or approved, that the Lumetallix product's core process is "patented," reflected in Exhibit Q; (c) statements in commercial promotion that Plaintiffs were infringing such rights, including the statement by Terpstra reflected in Exhibit E; (d) statements in commercial promotion by Obtainium and Schiff that the Lumetallix product was "10,000x more sensitive that [sic] swabs" and similarly superior to traditional swab tests, including the statements reflected in Exhibits A and J; (e) affirmative statements and omissions in product-facing commercial promotion that misdescribed the composition of the Lumetallix product and concealed a material component of the product, and that thereby also conveyed that the product was properly and fairly comparable to competing products in the United States market; and (f) paid-promoter statements, disseminated by promoters whom, on information and belief, the Lumetallix defendants compensated and supplied, directed to United States consumers, that the Lumetallix product was the test used by

the promoter to identify her own household's lead exposure, when that representation was false and Defendants knew or should have known it was false.

98. The challenged statements and omissions were either literally false or, at minimum, misleading in context. The false patent-rights statements were false because no issued United States patent existed that granted Defendants the right to exclude Plaintiffs, and the applications on which Defendants relied had been the subject of objections that the claimed subject matter is not novel and not inventive and had not issued, as reflected in Exhibits H and I.

99. The website statement that the Lumetallix product's core process is “patented” was literally false because, at the time it was published and at the time of the filing of this Complaint, no United States patent had issued in connection with the Lumetallix product, as established by the March 19, 2026 USPTO non-final office action (Exhibit H) and the February 9, 2026 EPO communication (Exhibit I).

100. The paid-promoter false origin statement was literally false in light of the Fluoro-Spec business records establishing that the promoter purchased, used, and remediated her home using Plaintiffs' product, not Defendants' product, attached as Exhibits R and T.

101. The challenged statements and omissions were material because they concerned patent exclusivity, legal right to sell, product composition, lawful sale in the United States, comparative product performance, and the product's actual use by the promoter for the purpose she publicly invoked, and were likely to influence purchasing, distribution, listing, endorsement, or promotional decisions. Comparative sensitivity is the principal performance attribute on which purchasers of lead-detection kits choose between competing products, and the “10,000x more

sensitive that [sic] swabs" statement appeared on the product packaging displayed in the principal image of the Amazon listing itself.

102. The statement that "the core of Lumetallix is a patented chemical process" describes a feature of the Lumetallix product itself, the reagent chemistry, and misleads consumers, platforms, and distributors into believing that the chemistry is unique and exclusive to Lumetallix and that competing perovskite-based kits, including Fluoro-Spec's, are unauthorized copies made with inferior or infringing chemistry. The statement thereby misrepresents the nature, characteristics, and qualities of Defendants' product and of Plaintiffs' product.

103. The challenged statements were placed in interstate commerce through nationwide commercial channels including Amazon, lumetallixusa.com, Instagram, LinkedIn, and Walmart.

104. Plaintiffs fall within the zone of interests the Lanham Act protects and have alleged injuries proximately caused by the misrepresentations. Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014).

105. Plaintiffs have been injured in their commercial interests in sales and reputation as a direct and proximate result of those false or misleading statements and omissions, including diversion of United States sales away from Plaintiffs to Defendants and impairment of Plaintiffs' marketplace position.

106. The foregoing Defendants' conduct was willful, deliberate, and undertaken to obtain a competitive advantage in the United States market. The tenfold spread between Defendants' own published sensitivity figures, neither of which derives from any test or measurement, further evidences the willful character of Defendants' conduct and supports a finding that this is an exceptional case.

107. Plaintiffs are entitled to damages, to disgorgement of Defendants' profits to the extent permitted by 15 U.S.C. § 1117 and equity, to injunctive relief, to corrective advertising, to costs, and, if this is an exceptional case, to attorneys' fees.

**COUNT TWO**
FALSE PATENT MARKING IN ADVERTISING
35 U.S.C. § 292
(Against Defendants Lumetallix Holding B.V., Lumetallix B.V., Terpstra, Obtainium LLC, and Schiff)

108. Plaintiffs repeat and reallege paragraphs 1 through 94 as if fully set forth herein.

109. Under 35 U.S.C. § 292(a), it is unlawful, without the consent of the patentee, to mark upon, affix to, or use in advertising in connection with any unpatented article, the word "patent" or any word or number importing the same is patented, for the purpose of deceiving the public. Under 35 U.S.C. § 292(b), any person who has suffered a competitive injury as a result of a violation of § 292(a) may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury.

110. Defendants used in advertising, on the United States-facing website lumetallixusa.com, the statement that "the core of Lumetallix is a patented chemical process," as reflected in Exhibit Q. That statement uses the word "patented" in advertising in connection with the Lumetallix product.

111. The Lumetallix product is an unpatented article. No United States patent has issued in connection with the Lumetallix product or its core process, as reflected in the March 19, 2026 USPTO non-final office action rejecting all fifteen claims of U.S. Patent Application No. 18/285,431 (Exhibit H), the February 9, 2026 EPO examining-division communication objecting

that the corresponding claims are not novel and not inventive (Exhibit I), and the third-party preissuance submission filed by Ritter under 37 C.F.R. § 1.290 (Exhibit U).

112. Defendants used the word “patented” in advertising in connection with an unpatented article for the purpose of deceiving the public. Defendants' deceptive intent is established by, among other things, the following facts: (a) the Lumetallix defendants are sophisticated participants in the United States patent system who have actively prosecuted patent applications in multiple jurisdictions and are therefore familiar with the difference between an issued patent and a pending application; (b) the Lumetallix defendants received and were on notice of the March 19, 2026 USPTO office action rejecting all fifteen claims of their corresponding United States application, yet the advertising that the Lumetallix product's core process is presently “patented” continued after that office action; (c) the Lumetallix defendants received and were on notice of the February 9, 2026 EPO communication objecting that the corresponding claims are not novel and not inventive, yet the same advertising continued; (d) the physical bottle that Obtainium ships to United States customers bears the legend “patent pending,” while the United States-facing website that Obtainium and Schiff operate stated in the present tense that the core process is “patented,” demonstrating that the responsible Defendants know how to describe a pending application accurately and are aware of the legal distinction; (e) Obtainium and Schiff were on notice of the true status of the applications at least as of service of this action upon them, and their counsel's July 9, 2026 pre-motion letter concedes that the applications “remain pending” and states that Obtainium “has already taken down any reference within its control” to the product being patented, an admission of control over the challenged advertising; and (f) the Lumetallix defendants used the present-tense “patented” representation in conjunction with public assertions that Plaintiffs' competing product was infringing or copied, an asserted

exclusionary right that requires an issued patent and that confers a marketplace advantage available only by reason of the representation.

113. Plaintiffs have suffered competitive injury as a result of Defendants' false patent marking in advertising. The false "patented" representation operated to confer on Defendants the perceived legitimacy and exclusionary aura of an issued patent in the same United States marketplace in which Plaintiffs compete with a directly comparable, perovskite-based lead-detection product. As a direct competitor selling into the same channels, Plaintiffs experienced concrete diversion of United States sales, suppression of marketplace opportunities, and impairment of Plaintiffs' standing with consumers, platforms, distributors, and intermediaries who relied on the false representation. See Sukumar v. Nautilus, Inc., 785 F.3d 1396 (Fed. Cir. 2015).

114. Plaintiffs are entitled under 35 U.S.C. § 292(b) to damages adequate to compensate for the competitive injury sustained, in an amount to be determined at trial, together with injunctive relief, corrective advertising, costs, and such other relief as the Court deems just and proper.

## COUNT THREE

FALSE ADVERTISING UNDER THE LANHAM ACT (IN THE ALTERNATIVE)
(Website "Patented" Statement)
15 U.S.C. § 1125(a)(1)(B)
(Against Defendants Lumetallix Holding B.V., Lumetallix B.V., Terpstra, Obtainium LLC, and Schiff)

115. Plaintiffs repeat and reallege paragraphs 1 through 94 as if fully set forth herein. Plaintiffs plead this Count in the alternative to Count Two, on the same operative statement.

116. Defendants used in commerce, on the United States-facing website lumetallixusa.com, the commercial advertising statement that "the core of Lumetallix is a patented chemical process," as reflected in Exhibit Q.

117. That statement is literally false. No United States patent has issued in connection with the Lumetallix product or its core process. Exhibits H, I, and U.

118. The statement is material to consumers, platforms, distributors, and intermediaries because it concerns the nature, characteristics, and qualities of the Lumetallix product and is likely to influence purchasing, listing, distribution, and endorsement decisions.

119. The "patented chemical process" statement describes a feature of the Lumetallix product itself, the reagent chemistry, and misleads consumers, platforms, and distributors into believing that the chemistry is unique and exclusive to Lumetallix and that competing perovskite-based kits, including Fluoro-Spec's, are unauthorized copies made with inferior or infringing chemistry. The statement thereby misrepresents the nature, characteristics, and qualities of Defendants' product and of Plaintiffs' product.

120. The statement was placed in interstate commerce on a nationwide website directed at United States consumers.

121. Plaintiffs are direct competitors of Defendants in the United States market for perovskite-based lead-detection products, fall within the zone of interests of the Lanham Act, and have been injured by reason of the false advertising. Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014).

122. Plaintiffs have been injured in their commercial interests in sales and reputation as a direct and proximate result of the false statement, and Defendants' conduct was willful.

123. Plaintiffs are entitled to damages, to disgorgement of Defendants' profits to the extent permitted by 15 U.S.C. § 1117 and equity, to injunctive relief, to corrective advertising, to costs, and, if this is an exceptional case, to attorneys' fees.

**COUNT FOUR**

TORTIOUS INTERFERENCE WITH CONTRACT

(New York Common Law)

(Against Defendants Lumetallix Holding B.V., Lumetallix B.V., Terpstra, and Buyserd)

124. Plaintiffs repeat and reallege paragraphs 1 through 94 as if fully set forth herein.

125. Fluoro-Spec had a valid written contract or binding commercial agreement with Master Labs LLC, entered on or about April 1, 2026. Exhibit M.

126. Defendants knew of that contractual relationship.

127. Defendants intentionally procured or attempted to procure a breach, suspension, or impairment of that contract by sending the April 14, 2026 communication into New York containing false and misleading statements and threats directed at continued performance. Exhibit N.

128. Defendants acted without justification and used wrongful means, including false factual and legal assertions concerning patent rights, infringement, copyright, regulatory status, and Plaintiffs' right to sell.

129. Plaintiffs' Master Labs contract and commercial relationship were impaired, threatened, and chilled as a result. Plaintiffs do not seek in this action the monetary value of the Master Labs

relationship. Plaintiffs seek injunctive, corrective, and punitive relief on this Count, and such compensatory damages, if any, as are not duplicative of any recovery sought in a separate proceeding concerning the Master Labs relationship.

**COUNT FIVE**
TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS
(New York Common Law)
(Against Defendants Lumetallix Holding B.V., Lumetallix B.V., Terpstra, and Buyserd)

130. Plaintiffs repeat and reallege paragraphs 1 through 94 as if fully set forth herein.

131. Plaintiffs had prospective business relations and commercial expectancies with identifiable distributors, promotional counterparties, platforms, and customers in the United States market.

132. Defendants knew of those expectancies.

133. Defendants interfered with those expectancies by wrongful means, including knowingly false representations of patent status, false claims that Plaintiffs lacked the legal right to sell, false or misleading complaints to platforms, false or misleading product-composition and lawful-sale messaging, paid-promoter false advertising, and other false commercial statements directed to intermediaries.

134. Defendants acted through independently wrongful conduct, including false commercial speech and false statements directed to third parties to disrupt Plaintiffs' business relations.

135. Plaintiffs were injured by reason of Defendants' interference, including diversion of United States sales and marketplace opportunities. Plaintiffs do not seek in this action the

monetary value of any Rubin or Master Labs commercial relationship as a measure of damages on this Count.

**COUNT SIX**
DECLARATORY JUDGMENT
28 U.S.C. §§ 2201–2202
(Against Defendants Lumetallix Holding B.V. and Lumetallix B.V.)

136. Plaintiffs repeat and reallege paragraphs 1 through 94 as if fully set forth herein.

137. An actual controversy exists between Plaintiffs and the Lumetallix defendants concerning whether Defendants presently possess issued United States patent rights that bar Plaintiffs' sale of the competing lead-test product at issue.

138. Defendants have asserted, directly or indirectly, that they possess such rights and have used those assertions to threaten, deter, or disrupt Plaintiffs' commercial relationships, including through the statements reflected in Exhibits E, F, G, and Q.

139. Plaintiffs contend that, at the time of the challenged statements and as of the filing of this Complaint, no issued United States patent granted Defendants the right to exclude Plaintiffs from the sales activity at issue. The United States Patent and Trademark Office has rejected all claims of U.S. Patent Application Serial No. 18/285,431 in a non-final office action (Exhibit H), and the European Patent Office has objected, in an examining-division communication that is part of ongoing examination and not a final decision, that the corresponding claims are not novel over prior art and not inventive (Exhibit I), and no patent has issued in any jurisdiction relevant to Plaintiffs' United States sales.

140. Plaintiffs seek a declaration that, on the facts alleged herein, Defendants do not hold an issued United States patent that grants them the right to prevent Plaintiffs from selling the competing lead-test product identified in this Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment as follows:

A. Awarding damages on Counts One and Three in an amount to be determined at trial;

B. Awarding disgorgement of Defendants' profits earned through the challenged false advertising to the extent permitted by 15 U.S.C. § 1117 and equitable principles;

C. Awarding damages adequate to compensate Plaintiffs for the competitive injury caused by Defendants' false patent marking in advertising under 35 U.S.C. § 292(b);

D. Awarding compensatory damages on the state-law claims in an amount to be determined at trial, exclusive of any losses arising from the Rubin or Master Labs relationships;

E. Awarding punitive damages on the state-law claims to the extent permitted by law;

F. Issuing preliminary and permanent injunctive relief prohibiting Defendants from making false statements that they possess issued patent rights or that the Lumetallix product or its process is presently “patented,” from making false comparative-sensitivity claims not supported by competent substantiation, from making false complaints or threats to commercial counterparties based on nonexistent patent rights or materially

misleading product-composition and lawful-sale messaging, and from knowingly supporting the dissemination of false origin or efficacy claims by paid promoters in United States commerce;

G. Requiring corrective advertising or corrective notice, including a public retraction of the false patent-rights and comparative-performance statements, directed to the same channels or categories of channels to which the false statements were directed;

H. Entering declaratory relief as requested in Count Six;

I. Awarding costs;

J. Awarding attorneys' fees if this case is found to be exceptional under the Lanham Act or otherwise authorized by law;

K. To the extent any compensatory damages awarded in this action are found, on the record, to be duplicative of compensatory damages actually collected by Plaintiffs in a separate proceeding for the identical loss, providing for an offset solely against such duplicative compensatory damages actually collected; and

L. Awarding such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: July 26, 2026

New York, New York

Respectfully submitted,

ISHIMBAYEV LAW FIRM, P.C.
By: /s/ Dmitriy Ishimbayev
Dmitriy Ishimbayev, Esq.
1 World Trade Center, Suite 8500
New York, New York 10007
Tel: (212) 220-6548
di@ishimbayev.com
Counsel for Plaintiffs